## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## SOUTHERN DIVISION

SHELBY STEPHENS,                          *

            Plaintiff,                 *

   v.                                  *          Civil Action No. AW-04-234

REED BROTHERS DODGE, INC., *et al.*,      *

            Defendants.               *

                             * * * * *

## MEMORANDUM OPINION

This action involves a suit brought by Shelby Stephens ("Stephens" or "Plaintiff") against Reed Brothers Dodge, Inc. ("Reed Brothers") and Suntrust Bank ("Suntrust") (collectively, "Defendants") concerning her purchase of an automobile from Reed Brothers and the financing of that automobile, obtained through Suntrust. Currently pending before the Court is Plaintiff's Motion for Partial Summary Judgment [31] and Defendants' Cross-Motion for Summary Judgment [32]. The Court has reviewed the entire record, as well as the pleadings with respect to the instant motions. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons stated below, the Court will grant Defendants' Cross-Motion for Summary Judgment.

## I.     FACTUAL & PROCEDURAL BACKGROUND

The following facts are taken in the light most favorable to the non-movant. In October 2001, Stephens came across an advertisement in a newspaper for a car. Although Stephens cannot remember the particular vehicle that was advertised, she remembers that the advertisement was placed by Reed Brothers, a local Dodge dealership. In late October 2001, Stephens took the advertisement — which she

no longer possesses for this Court's review — to Reed Brothers.  Stephens was told that the specific vehicle referred to in the advertisement was not longer available, but that other vehicles were available for her purchase.

On November 3, 2001, Stephens returned to Reed Brothers.  While browsing in the showroom, Stephens saw and inquired after the availability of a black Dodge Stratus.  Although the showroom vehicle had been sold, William East ("East"), a Reed Brothers salesperson, informed Stephens that Reed Brothers could obtain a similar car for her from another Dodge dealership.  East told Stephens that a similar car would approximately cost between $16,000 and $17,000.  Stephens authorized East to obtain a similar black Dodge Stratus for her purchase.

On November 5, 2001, East telephoned Stephens to let her know that her car had arrived.  On November 6, 2001, Stephens again went to Reed Brothers.  Stephens signed a contract to purchase a black, two-door Dodge Stratus (the "Car") for $17,316, presenting a $6000 down payment at the time of purchase.

Subsequent to the purchase, Stephens returned her Car to Reed Brothers on numerous occasions for a variety of different repairs.  With two exceptions, these problems were taken care of at the time they were presented to Reed Brothers without charge to Stephens.  The two defects that were not immediately and effectively repaired were (1) the trunk carpet lining, which repeatedly became detached, and (2) the Car's breaks, which Plaintiff asserts often squeaked when used.  With regards to the breaks problem, Stephens presented the Car to Reed Brothers for repair on at least nine occasions, and each time Reed Brothers attempted, without success, to correct the break issue to the satisfaction of Stephens.  Repeatedly, Reed Brothers servicepersons told Stephens that the noise she was hearing was normal.

On January 28, 2004, Plaintiff filed suit against Reed Brothers and Suntrust.  Plaintiff's Complaint contains various state and federal law claims against Reed Brothers as follows:  Count I — Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1); Count II — Violation of the Maryland Consumer Protection Act, Md. Comm. Law Code § 13-1301(1); Count III — Deceptive Advertising Practices in Violation of the Maryland Consumer Protection Act, Md. Comm. Law Code § 13-1301(5); Count IV — Deceptive and Fraudulent Sales Practices in Violation of the Maryland Consumer Protection Act, Md. Comm. Law Code § 13-1301(9)(i); Count V — Violation of the Maryland Automotive Warranty Enforcement Act, Md. Comm. Law Code § 14-502(c)(1); Count VI — Breach of Contract; and Count VII — Fraud.  Additionally, Plaintiff's Complaint contains a single claim against Suntrust:  Count VIII — Violation of FTC Holder Rule.

On July 22, 2004, Plaintiff's designated expert, Joseph Kuhn ("Kuhn"), viewed Plaintiff's Car with regards to this case.  Kuhn was unable to road-test the Car, as it had a dead battery at the time in question.  Further, Kuhn did not interview Plaintiff concerning the operation of her Car, nor did he perform any tests on the Car.  At his deposition, Kuhn conceded that, as he did not road-test the Car, he was not aware of whether or not the breaks on the Car actually squeaked.  In response to counsel's inquiries, Kuhn stated, in pertinent part, as follows:

> Q.   Now in this case, you can't really opine about whether or not the problems Ms. Stephens complained about with the brakes really are a problem without having heard them, correct?
>
> A.   I'd say you're probably correct.  Because even my opinion about what's normal and abnormal may be different from somebody else's.

As such, not having heard the Car breaks squeak, Kuhn explained that he could not dispute the conclusions

of the Reed Brothers servicepersons that the break noise in question was normal.

On August 2, 2004, Defendants' designated expert, Robert Wilson ("Wilson"), examined and road-tested Plaintiff's Car. Wilson concluded that the breaks did not speak or otherwise emit an abnormal noise when used.

Plaintiff also gave a deposition in this case. At that deposition, Plaintiff conceded that no one from Reed Brothers ever made any statements to her that were false or misleading. Additionally, at no point did Plaintiff or her expert assert that the break squeaking problem rendered the Car unsafe for travel.

On November 13, 2004, Plaintiff filed her Motion Partial Summary Judgment as to Count V of her Complaint, claiming a violation of the Maryland Automotive Warranty Enforcement Act, also known as the Maryland Lemon Law. On November 29, 2004, Reed Brothers and Suntrust filed their Cross-Motion for Summary Judgment on all counts. The instant motions are ripe for disposition and the Court will now issue an Opinion.

## II.    <u>SUMMARY JUDGMENT STANDARD</u>

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment will be granted when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Haavistola v. Cmty. Fire Co. of Rising Sun, Inc.*, 6 F.3d 211, 214 (4th Cir. 1993); *Etefia v. East Baltimore Comm. Corp.*, 2 F.Supp.2d 751, 756 (D. Md. 1998). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. Pro. 1). The court must "draw all justifiable inferences in favor

of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine*, 501 U.S. 496, 520 (1991) (internal citations omitted). While the evidence of the non-movant is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.,* 152 F.3d 326, 330-31 (4th Cir. 1998); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

**III.    ANALYSIS**

The Court notes at the outset that many of Plaintiff's claims are interrelated and, in some circumstances, dependent upon one another.  As such, the Court will consider Plaintiff's claims in the order most efficient to their disposition.

**A.    Count VII — Fraud**

In Maryland, in order to recover damages in an action for fraud, a plaintiff must prove:  (1) that the defendant made a false representation to the plaintiff; (2) that the falsity of the representation was known to the defendant or that the representation was made with reckless indifference as to its truth; (3) that the misrepresentation was made for the purpose of defrauding the plaintiff; (4) that the plaintiff reasonably relied upon the misrepresentation; and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.  *Ellerin v. Fairfax Sav.*, 652 A.2d 1117, 1123 (Md. 1995).  In this case, Plaintiff identifies the following three representations by Reed Brothers as constituting fraud:  (1) that the automobile Reed Brothers advertised was not available for sale; (2) that the Dodge Stratus Plaintiff observed in the showroom had already been sold; and (3) that the Car sold to Plaintiff was a "new" car.

The Court finds that Plaintiff has not presented sufficient evidence to support any of these

allegations and will therefore grant summary judgment to Reed Brothers as to Count VII of Plaintiff's Complaint.  Specifically, Plaintiff conceded in her deposition that at no time did Reed Brothers or its employees make any statements to her that were false or misleading.  Additionally, Plaintiff has not presented the Court with any evidence that the alleged "bait and switch" scheme actually existed; she cannot remember what the advertisement stated, when she saw it, or which model of car it advertised.  Nor can Plaintiff remember how much time passed between when she first saw the advertisement and when she first visited Reed Brothers.  Moreover, there is no evidence that the Dodge Stratus in the showroom was in fact available for sale or that Plaintiff was sold anything other than a new car.[1]  As Plaintiff's fraud claim is plainly deficient, the Court will grant summary judgment to Reed Brothers as to Count VII of Plaintiff's Complaint.

**B.**      **Counts II, III, & IV — Maryland Consumer Protection Act**

Plaintiff's allegations under Counts II, III, & IV of her Complaint merely reiterate the factual claims made in support of her fraud action, *i.e.*, that Reed Brothers refused to honor its newspaper advertisement, pulled a "bait and switch" on Plaintiff, and failed to sell her a new vehicle.  For the reasons stated above, Plaintiff's allegations lack merit and, indeed, are contradicted by Plaintiff's own deposition testimony.  As such, the Court will grant summary judgment to Reed Brothers as to Counts II, III, & IV of Plaintiff's Complaint.

**C.**      **Count VI — Breach of Contract**

Plaintiff's Complaint alleges that Reed Brothers breached the implied warranty of merchantability

---

[1]The Court notes that Plaintiff's expert witness conceded that the Car in question was a new vehicle.

6

and ordinary fitness inherent in the sales contract for the Car.  The Court disagrees and will grant summary

judgment to Reed Brothers.

In Maryland, a warranty that goods shall be merchantable is implied in a contract for the sale of

goods if the seller is a merchant with respect to goods of that kind.  Md. Code Ann., Commercial Law,

§ 2-314(1) (2005).  In order to satisfy the implied warranty of merchantability, a good must be, *inter alia*,

fit for the ordinary purposes for which such goods are used.  *Id.*  Here, Plaintiff argues that the Car was

not fit for the ordinary purposes for which cars are generally used.  In Maryland, the warranty of fitness for

the ordinary purpose "simply means that the automobile is fit for reasonably safe transportation when it is

used in its normal manner."  *Mercedes Benz of North Am., Inc. v. Garten*, 618 A.2d 233, 240 (Md. Ct.

Spec. App. 1993).

In this case, Plaintiff does not dispute that the Car was safe for use as transportation.  Both Plaintiff

and her expert conceded that there was no indication that the brakes failed to stop the car in a timely

manner or otherwise operated in an unsafe manner.  As for the noise the brakes emitted, the Court finds

that Plaintiff has not presented any evidence that the noise deviated from the normal noise made by car

breaks.  *See* Md. Code Ann., Commercial Law, § 2-314(2) (2005).  Indeed, Plaintiff's expert testified

that there is no industry standard with regard to normal noises made by car brakes and, moreover, stated

that he could not contradict Defendants' expert's claim that the Car made no improper break noises

whatsoever.  As such, the Court will grant summary judgment to Reed Brothers as to Count VI of Plaintiff's

Complaint.

### D.    Violation of the Maryland Automotive Warranty Enforcement Act

Plaintiff's Complaint alleges that Reed Brothers violated Maryland's Lemon Law because the Car

7

Plaintiff purchased from Reed Brothers was out of service for more than thirty days for repairs and Reed Brothers was unsuccessful on four or more attempts to fix the brake noise complained of by Plaintiff.  Reed Brothers argues that it is the inappropriate party to sue under Maryland's Lemon Law, as the statute provides a remedy against the manufacturer, and not the dealership.  The Court agrees.

Maryland's Lemon Law provides a choice of remedies to the purchaser of a vehicle that contains a substantial defect, which is unable to be repaired after a reasonable number of attempts. Md. Code Ann., Commercial Law, § 14-1502(c)(1) (2005).  Specifically, the Maryland Lemon Law states, in pertinent part:

> (c)(1) If, during the warranty period, the manufacturer or factory branch, its agent, or its authorized dealer is unable to repair or correct any defect or condition that substantially impairs the use and market value of the motor vehicle to the consumer after a reasonable number of attempts, *the manufacturer or factory branch*, at the option of the consumer, shall:
>
> (i) Replace the motor vehicle with a comparable motor vehicle acceptable to the consumer; or
>
> (ii) Accept return of the motor vehicle from the consumer and refund to the consumer the full purchase price...

*Id.* (emphasis added).

Plaintiff focuses her argument on whether her situation qualifies as a "reasonable number of attempts" to correct a substantial impairment to her vehicle, pursuant to subsection (d) of the Maryland Lemon Law.  However, the Court does not reach this issue.  Rather, the Court agrees with Reed Brothers, that the plain language of the statue authorizes suit against the "manufacturer or factory branch," which is defined distinctly from the "authorized dealer."  Indeed, the only mention of the authorized dealer speaks to *repairs* on the vehicle, not to *compensation* for the failure of the dealership to effectively make such

repairs.  Here, Plaintiff has sued Reed Brothers and not Chrysler Motors Corporation.  As such, the Court will grant summary judgment to Reed Brothers as to Count V of Plaintiff's Complaint.

**E.**       **Count I — Violation of the Magnuson-Moss Warranty Act**

The Magnuson-Moss Warranty Act provides for the recovery of attorneys fees and costs in federal court where a plaintiff has demonstrated "the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract."  15 U.S.C. § 2310(d)(1).  As Plaintiff has failed to demonstrate a violation of the implied warranty of merchantability,[2] she cannot prove liability under the Magnuson-Moss Warranty Act. Therefore, the Court will grant summary judgment to Reed Brothers as to Count I of Plaintiff's Complaint.

**E.**       **Count VIII — Violation of FTC Holder Rule.**

The FTC Holder Rule requires that any consumer credit contract in connection with the sale or lease of goods to consumers contain, in ten point bold face type, the following provision:

> NOTICE:   ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

*See* 16 C.F.R. § 4332.  The FTC Holder Rule prevents creditors from availing themselves of holder-in-due-course status and thus "acts as a shield for consumers, protecting them from creditors by allowing non-payment when a seller has defrauded the consumer in some way." *Crews v. Altavista Motors, Inc.*, 65

---

[2]*See* Section III (C), *supra*.

F.Supp.2d 388, 390 (W.Va. 1999).

Here, Plaintiff claims that, because she was defrauded by Reed Brothers in various ways, she is not liable for any debts owed to Suntrust. In this way, Count VIII of Plaintiff's Complaint is entirely dependent upon the success of her other claims against Reed Brothers, which this Court has already found to be lacking. Therefore, the Court will grant summary judgment to Suntrust as to Count VIII of Plaintiff's Complaint.

## IV.   <u>CONCLUSION</u>

For all of the aforementioned reasons, the Court will DENY Plaintiff's Motion for Partial Summary Judgment [31] and GRANT Defendants' Cross-Motion for Summary Judgment [32]. An Order consistent with this Opinion will follow.

Date:  <u>July 12, 2005</u>                         <u>            /s/            </u>
                                                    Alexander Williams, Jr.
                                                    United States District Court